RECEIVED

DEC 11 2017

US BANKRUPTCY COURT
NORFOLK DIVISION

December 8, 2017

Kenneth N. Whitehurst III
Assistant United States Attorney
Office of The United States Trustee
200 Granby Street
Suite 625
Norfolk, VA. 23510

RE: BCN # 16-74022-SCS

```
NORFOLK DIVISION
F                    F
I                    I
L     DEC 11 2017    L
E                    E
D                    D
     CLERK
  U.S. BANKRUPTCY COURT
```

Dear. Mr. Whitehurst,

This letter is submitted as what seems to be my last resort. My bankruptcy case is in serious jeopardy, and I believe this to be in part, due to my attorney's lack of representation on my behalf. Below list of grievances briefly highlights what I believe to unprofessional and possibly unethical actions by Mr. Tripp and his staff, putting me in serious jeopardy and potentially foreclosure on my home and business.

John Tripp was retained October 18, 2016 and paid $2500.00. In the four months following, Mr. Tripp asked for and was paid additional fees, bringing the total paid to $8825.00 despite signing retainer agreements (3) acknowledging Mr., Tripp's fee for Chapter 12 bankruptcy is $5,375.00.

On January 23, 2017, in response to Wells Fargo motion for relief from automatic stay, an order was entered stating *"parties agree that Debtor herein should have the opportunity to apply for and be reviewed for loan modification and other home retention foreclosure alternatives.* Yet on November 9, 2017, Wells Fargo again filed for relief from stay, my attorney did not file a response, or argument on my behalf.

On April 7, 2017, I received a letter from Mr. Tripp's senior paralegal disputing funds paid, requesting additional funds and **refusing to file my Chapter 12 Plan until I submitted additional funds above $8325.00 already paid.** The letter references my case being dismissed if I do not pay an inaccurate balance due, as their firm would not file my chapter 12 plan. (letter attached). A

Between April 2017 and September 2017, Mr. Tripp filed three adversary proceedings on my behalf. All **three** proceedings (May 19th, August 31st and November 1st) were dismissed by the court *due to Plaintiff's failure to comply with Federal Rules of Bankruptcy Procedure regarding service of the complaint filed.*

Growing concern over the lack of progress in my case caused me to send several letters to Mr. Stackhouse. I believed he was the only person to be able to speak with my attorney and possibly motivate Mr. Tripp to diligently represent me (both letters are attached). I have reprimanded for sending communication to Mr. Stackhouse, however, as my case is falling apart I don't know any other recourse. B.C

On October 16, 2017, Mr. Tripp advised the largest creditor in my case, Wells Fargo Home Mortgage, had made an offer of settlement outside of bankruptcy to issue a new note for $630,000.00, term of 30 years at 5.25% interest rate. Before I had a chance to truly consider the offer (I was in an accident and had a concussion, medical documentation was submitted to Mr. Tripp), the adversary proceeding was again dismissed by the court, and Wells Fargo filed a motion for relief of stay. In response to WFHM's motion, I printed every document on my case from PACER, and prepared a response that shed some light on my position in this case. Mr. Tripp instead, after my insistence to incorporate my notes into a response, submitted an incredibly disappointing response without ever allowing me to review.

I prepared and submitted an outline for a Chapter 12 Plan on December 29, 2016, however, the first time a plan was submitted on my behalf was August 21, 2017. Preparation for the plan was solely done the evening the plan was done, by email with Mr. Tripp's senior paralegal. Finally, at 11;30 p.m. on August 21st, a plan was submitted, although I was displeased with the minimal information prepared by my attorney regarding my finances and ability to make plan payments. This plan was received several objections, and required a modified plan.

I prepared and submitted a modified plan to Mr. Tripp on November 11, 2017. Unbeknownst to me, a modified plan was due no later than November 14, 2017. On the evening of November 15, 2017, Mr. Tripp's senior paralegal sent me a modified plan for endorsement that was **EXACTLY** as I submitted to him. I wrote the plan Mr. Tripp submitted. I was stunned. Mr. Tripp put zero effort into my modified plan, nor did he provide any guidance as I prepared the information for the plan.

Mr. Stackhouse has objected to the plan for several reasons, one being feasibility. I have not received any guidance regarding preparing monthly financials, nor was I told to make post-petition payments, at least not until Mr. Stackhouse's recent objection. Back in January of this year, during the meeting of creditors, Mr. Stackhouse commented that I should stay current on all vehicle payments. That was the extent of any discussion regarding payments, and it came from Mr. Stackhouse, not my attorney. Despite submitting monthly financials as directed by the court, I received zero guidance regarding aspects of my finances. I truly believe Mr. Tripp has not reviewed a single month's financial statement that I have prepared.

This week I am facing a motion to dismiss my bankruptcy case, yet Mr. Tripp has not filed anything in response. Again, I prepared answers to each line of Mr. Stackhouse's motion, including correcting inaccurate information. Mr. Tripp ignored the documents I presented.

Throughout this case, Mr. Stackhouse noted attorney fees were not in the plan. Mr. Tripp has advised from the beginning he hoped for a loan modification outside of bankruptcy. When Mr. Tripp suggested I take the settlement offer from Wells Fargo in October outside of bankruptcy, when in fact the offer was NOT outside of bankruptcy, I believed then as I do now Mr. Tripp wants my case to go away without the court taking a closer look at what has transpired.

This morning, I reviewed my case in PACER, as I do every day. The hearing set for December 21, 2017 for plan confirmation has been canceled *due to Plaintiff's failure to comply with Federal Rules of Bankruptcy Procedure regarding service of the complaint filed.*

This farm is my home and home to my adult daughter and grandson. The farm is also my business and a non-profit organization serving at-risk youth of our community. In 2017, *nineteen hundred children and adolescents have experienced emotional healing from the benefit* of equine facilitated learning services provided here. Next year, 2018, we have commitments totaling three thousand children including our regions only shelter for children, Seton Youth Shelter. We also serve children from Barry Robinson Center, Tidewater Youth Services Foundation and The Renaissance Academy (part of the Virginia Beach Public School system), to name a few.

Sir, I believe with adequate representation and guidance, my case would have emerged from bankruptcy with a confirmed plan, a plan all parties could live with. Wells Fargo has suggested I have been acting in bad faith. I submit it has not been me acting in bad faith, rather the attorneys involved in this case. I have, on two occasions, advised Mr. Tripp he no longer represents me, and have requested he return all fees paid to his firm.

*Your time and review of this matter are truly appreciated. I welcome, and value any guidance offered.*


Best regards,

*[signature]*

Alicia Mahar


cc: Honorable Judge John St John
    R. Clinton Stackhouse
    John Tripp

ENC.

April 7, 2017

A

- Good morning Ms. Mahar,

After reviewing our accounting and your two bankruptcy cases that we have been counsel of record on, the following is an explanation on all of the payments you have made to us and your balance owed to date:

1. On October 18, 2016 you retained us for your active Chapter 13 Case (16-72957). You paid $2,500.00 which was for the following work:

   *Consultation with Mr. Tripp

   *Preparation and filing of Notice of Appearance

- *Review of your grievance letter

   *Review of your tax returns

   *Discussion w/ Trustee & opposing counsel on converting case to Chapter 12

   *Discussion w/ you and opposing counsel on the Motion for Relief Consent Order

   *Hearing for the Motion for Relief and Motion to Convert (which you were not

   present for and Mr. Tripp appeared on your behalf)

2. On October 26, 2016, you retained us for a new Chapter 13 Case. You paid $1,000.00.

3. On October 31, 2016 you paid an additional $300.00 to cover the filing fee for the Chapter 13 Case. It was later advised by Mr. Tripp and agreed by you that you file a Chapter 12 Case instead of another Chapter 13. Mr. Tripp applied the $1,300.00 you
- paid to the filing of your Chapter 12 Case. Our entire fee for the Chapter 12
Case including the filing fee is $5,375.00.

4. On Novemeber 21, 2016, we filed your Chapter 12 Case (16-74022).

5. On December 18, 2016, you made a payment totaling $1,250.00 towards your balance on your active Chapter 12.

6. On February 21, 2017, you made a payment totaling $500.00 towards your balance on your active Chapter 12.

7. Your balance as of today on your active Chapter 12 is **$2,325.00**. The balance will have to be **paid in full** before we file your Chapter 12 Plan. The deadline to file your Chapter 12 Plan is **June 22, 2017**. It is entirely up to you when you pay the balance; however, we can not file your Chapter 12 Plan unless your balance is paid in full. If you do not file your Chapter 12 Plan before the deadline of June 22, 2017, your case will be dismissed.

I have attached your new retainer agreement for your review and signature. The Trustee is expecting this agreement, therefore, we need you to sign and return the agreement ASAP; you may return the agreement via email or fax. Make sure to initial the bottom of each page and sign and date page 4.

Lastly, Mr. Tripp would like to meet with you in the office on Monday, April 10, 2017 at 2:00 p.m. Please confirm you will be there.

Thank you,


*Ashley Simmons (Cortinas)*

*Senior Paralegal/Office Manager\**

Tidewater Law Group, PLLC

468 Investors Place, Suite 202

Virginia Beach, VA 23452

(757) 490-3808 Telephone

(757) 490-3895 Facsimile

beachbankruptcy@aol.com

\*NOT licensed to practice law


CHAPTER 12 RETAINER.pdf

282kB

B

August 3, 2017

R. Clinton Stackhouse Jr., Trustee
7021 Harbor View Blvd., Suite 101
Suffolk, VA. 23435

RE: Case No. 16-74022-SCS

Good day Mr. Stackhouse,

Hope you are well. I have prepared this letter in my mind for many months, however, believe the time has come to document my concerns and forward to you. Please understand I do realize there may be court protocols involved in the delay that I am not aware. That said, the deadline for a plan is 19 days away and I don't feel any closer to resolution than I did a month ago.

As you are aware, my case has been very slow moving. I was advised to have my house appraised in January, which I did, and submitted to Mr. Tripp within a few weeks. Once the Adversary Proceeding was set in motion, Wells Fargo waited almost 30 days to advise they wanted their own appraisal. Certainly, this is understandable, yet, they scheduled 3 appraisals, I cleared my schedule to be home, and they were no-shows. This went on for over a month! It has been just shy of 2 months since the appraisal was finally completed, yet we have not received a copy of the appraisal.

Since last Wednesday when I was in court, I have followed up with Mr. Tripp 6 out of 7 business days to inquire if anything has transpired. Nothing! Today Mr. Tripp basically told me he understands I am anxious, however, would let me know when he hears from Malcolm Savage for Wells Fargo.

This case has been going on so long. The property has been appraised, I have the income to support a plan. I have been compliant every step of the way, and believe we are at a point of putting a workable plan together. Yet, we are just shy of 3 weeks till the plan deadline, there has not been any activity since court 10 days ago (that I am aware of), accordingly I am very worried my case will be dismissed.

Thank you for allowing me to share my concerns.

Respectfully,

*Alicia Mahar*

November 11, 2017

R. Clinton Stackhouse Jr., Trustee
7021 Harbor View Blvd., Suite 101
Suffolk, VA. 23435

RE: Case No. 16-74022-SCS

Dear Mr. Stackhouse,

I have composed this letter in my head on many occasions, however, miraculously my situation seemed to take a turn for the better before my thoughts were on paper. I was advised Wednesday evening the court dismissed a scheduled hearing for the following morning, regarding the valuation of my home. This would be the second time this hearing was dismissed or rescheduled, based on what I understand was improper service. Please excuse my lack of proper legal terms, my hope is to convey each situation as I understand it. I was notified the evening before the scheduled hearing although I believe the court removed it from the docket a week prior. Saturday evening, I checked PACER to learn Wells Fargo has a motion for relief of stay scheduled for November 30th.

I retained John Tripp over a year ago, and was required to pay all fees upfront although while in bankruptcy (I thought this was odd, however, I am not an attorney). The snafus have been numerous and outside my control. For the most part I am sure you are aware of many of the errors and delays that have occurred. The last nine months have been nerve-wracking at best. I continue to feel tentative regarding the outcome, although a month ago WFHM approached John to offer a resolution outside bankruptcy (I haven't received a proposal in writing, rather verbal from John). John pushed VERY strongly for me to accept it as offered, and get out of bankruptcy. I felt then and conveyed to John my desire to clear up any old liens or debts that resulted from embezzlement and fraud my business suffered (and landed me in this situation). John sees my situation differently despite my offering numerous plans that address all debts and language to address the I.R.S. Nothing has been done on my behalf regarding a plan or even progress update, therefore, I am preparing a plan to the best of my ability to submit in the coming days.

As information, the first Chapter 12 plan submitted was sent for my remove at 8:30 p.m., 3 ½ hours prior to deadline. I spent 3 hours emailing John's paralegal to provide information, and correct errors, despite previously submitted financials, information regarding my business, our growth, and income streams, and liquidity assessment (none of the information was included in the plan submitted).

Two weeks ago, I submitted plan information to John, he was not happy and quite verbal about it. The next day I sent John an email asking if he wanted to drop me as a client because his actions suggested he did. (I thought about alternative counsel many times, however, sincerely doubt an attorney would be willing to pick up my case at this point). He has yet to respond to that email.

Mr. Stackhouse, although the following information is useless in the court of law, it is very important to me. I run a horse boarding business, work with the ASPCA's legislative affairs division, and most importantly work with at-risk youth in our area. To-date this farm has served over 1,000 children in 2017 alone. At 55 years old I found my calling. There is not another organization within 500 miles that does what Circle A does. I am beyond proud of our work with at-risk youth and rescued equines. To take away this farm and the services it provides so many would be devastating, especially when we are so close to submitting a confirmable plan.

I spoke with John today, he has clients all day and again tomorrow. He is aware I am preparing a plan to submit that will, at the very least, address creditors. The exception is the I. R. S. which is scheduled for determination Wednesday, November 15, 2017. Additionally, I asked John if another valuation hearing had to be scheduled. His answer was no.

Thank you in advance for your time.

Respectfully.

Alicia Mahar


CC: John Tripp

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | |
|---|---|
| **In Re: Alicia Ann Mahar** <br> **Debtor.** | Case No. 16-74022-SCS <br> Chapter 12 |

AMENDED CHAPTER 12 PLAN

I.   **Date of Plan**   November 12, 2017.

II.   **ASSETS AND LIABILITIES**

On November 21, 2016, the Debtor filed for relief under Chapter 12.

As of filing, Debtor's combined assets and liabilities were as follows:

Total Assets: $638,911.65

Total Secured Debt: $1,373,973.41

Total Unsecured Debt: $267,775.31

III.   **PLAN FUNDING**

A. SCHEDULE OF PLAN PAYMENTS

The Debtor shall submit their projected future disposable income to the Chapter 12 Trustee in the amount of **$574.26**. The Debtor shall make monthly payments (the "Plan Payment"), to accommodate fluctuations in horse boarding and farm expenses and supplies over the next sixty (60) months.

B. CREDITORS TO BE PAID BY PLAN PAYMENTS

The Standing Chapter 12 Trustee shall disburse the monthly Plan Payment for the next sixty (60) months as follows:

Santander Consumer USA - Debtor proposes to cram down $7,180.00 to the NADA value of the vehicle $13856.00. Interest Rate: 4.0%   Monthly Payment: $312.86

Internal Revenue Service Balance Due:  $7,776.00 Collateral Desc.: 4345 Charity Neck Lane, Virginia Beach, VA 23457 Liquidation Value: $0.00 Interest Rate:  0% Terms:  $2500.00 lump sum payment at plan confirmation   Monthly Payments:  $87.93 for 60 months

Plan Payment for Unsecured Creditors: $121.26

Payment to Standing Trustee:   $52.21

### IV. FUNDS TO BE PAID OUTSIDE OF PLAN

The Debtor operates stables and a farm on the property located at 4345 Charity Neck Road, Virginia Beach, VA 23457. U.S. Bank National Association holds a lien on the property in the amount of $1,293,081.45. The property has a fair market value of $630,000.00.

The Debtor proposes to cram down the principal balance to the value of the property totaling $630,000.00 based on an assessment done on the property on June 16, 2017.

The Debtor proposes to amortize as follows:

Principal Balance:  $630,000.00   Length of Amortization:   30 years
Interest Rate:  5.25% (Prime Plus 1.25%) Monthly Payment:   $2,825.00

### V. PAYMENTS TO GENERAL UNSECURED CREDITORS

A. Capital One Bank (NA) in the approximate amount of $2,515.74
B. McAllister Towing of Virginia in the approximate amount of $41,933.12
C. U.S. Bank National Association in the approximate amount of $683,081.45

### VI. PAYMENTS TO PRIORITY CREDITORS

A. Trustee will be paid 10% of all sums disbursed to the Unsecured Creditors under the Plan.
B. I.R.S.  The Internal Revenue Service has filed a claim in the amount of $172,000.00 relating to certain alleged liabilities for unpaid employee withholding taxes.  The alleged liability was incurred in 2009 & 2010 when Debtor; s business suffered tremendous losses because of being victimized by embezzlement and fraud.  Debtor has been in contact with the Appeal Division of the Internal Revenue Service, a case decision phone conference is scheduled for November 28, 2017 at 10:00 a.m.  Debtor feels confident sufficient evidence will release her from alleged debt.  If an unfavorable decision is handed down, plan will be modified within 30 days to cure I.R.S. debt.

## VII. TREATMENT OF SECURED CREDITORS

A. Creditor: McAllister Towing of Virginia Balance Due: $41,933.12 Collateral Desc.: 4345 Charity Neck Lane, Virginia Beach, VA 23457 Liquidation Value: $0.00 Interest Rate: 0% Terms: This loan will be treated as unsecured

B. Creditor: U.S. Bank National Association Balance Due: $1,293,081.45 Collateral Desc.: 4345 Charity Neck Lane, Virginia Beach, VA 23457 Liquidation Value: $630,000.00 Interest Rate: 5.25% Terms: 30-year amortization, value of secured interest of $630,000.00 paid in monthly payments of $2,825.01, payments to commence on January 1, 2018.

C. Creditor: Santander Consumer USA, Inc. Balance Due: $20,989.00 Collateral Desc.: 2011 Ford F-150 Liquidation Value: $13,856.00 Interest Rate: Unknown Terms: Monthly payments in the amount of $312.00

## VIII. SOURCE OF PLAN FUNDING

Alicia Mahar is founder and Executive Director of Circle A Home for Horses Inc. a registered 501(c)3 non-profit Virginia corporation. Circle A's programs are operated from Mahar's residence, 4345 Charity Neck Rd, Virginia Beach, VA 23457. Founded in 2014, Circle A has grown exponentially in three years. Current projections indicate 1,500 at-risk youths or adolescents with histories of mental health diagnosis will visit Circle A in 2017. This year Seton Youth Shelters and Tidewater Youth Services Commission join Barry Robinson Center's participation in Circle A's dedicated programs to help children and rescued equines through paired bonding, fellowship and teaching. In September, Circle A launched a program for children with cancer and cancer survivors. Segments on Circle A's unique equine facilitated programs have been featured on WVEC in January 2017, and later WAVY 10 in July of this year.
Continued growth and success are projected enabling Circle A to sustain operations and meet financial obligations as outlined in the Chapter 12 Plan submitted.

**Debtor proposes $10,000.00 lump sum payment at time of plan confirmation.**

## IX. OTHER PROVISIONS

A. The Debtor is in the process of filing a lien avoidance on the lien against the Debtor's property in the amount of $41,933.12 plus interest, attorney's fees and court costs recorded by McAllister Towing of Virginia.
B. B. The Debtor is a PhD candidate; therefore, the Debtor's student loans are deferred while she attends school.
C. The Debtor's tax liability is currently in dispute. The matter is currently being handled by a revenue officer who has assured the Debtor that the tax liability will be either adjusted or eliminated.

D. The unsecured debt owed to Macy's in the approximate amount of $700.00 has been satisfied.
E. Unless the Plan provides otherwise, a secured creditor retains its lien, and all rights and remedies provided under its relevant loan documents, until the allowed amount of its secured claim is paid in full.
F. Upon confirmation of the Plan, all ownership rights and interests of the estate in the property of the estate shall vest in the Debtor.
G. Upon confirmation of the Plan, the Debtor may sell her property located at 4345 Charity Neck Road, Virginia Beach, VA 23457 free and clear of all liens, claims and encumbrances of U.S. Bank National Association, Internal Revenue Service and McAllister Towing of Virginia provided the liens of these creditors are paid in accordance with this Plan.
H. The Debtor agrees that, other than ordinary, annual cost of living increases, she shall not receive any increases in compensation until the provisions of this Plan have been fully complied with and all contemplated Plan payments have been made.
I. The Debtor shall provide, on an annual basis, the Chapter 12 Trustee, Internal Revenue Service and U.S. Bank National Association copies of her financial statements and shall also cooperate with such parties in response to all reasonable requests for additional financial or collateral information received by the Debtor during the pendency of this Plan.
J. In the event of the Debtor's default hereunder, which default is not cured within thirty (30) days written notice to the Debtor and Counsel to the Debtor, the secured creditors of the Debtor shall be entitled to exercise any and all remedies granted to her in accordance with the terms of the relevant loan documents.
K. The secured parties shall have the right, at their discretion, to file any such financing statements, including continuation statements, as may be necessary to re-perfect or continue the perfection of their security interest recognized herein.
L. The Debtor maintains the right to board horses and operate in the ordinary course of business.
M. Upon confirmation of the Plan, all defaults of the Debtor shall be deemed cured.

**Debtor has paid the following in legal fees related to this case (beginning June 2016):**

- $9500.00 to Tidewater Legal Group
- $3,000.00 to Westlake Legal Group
- $5,000.00 Mortgage Home Examiners
- $3750.00 Lenard Myers / Fortress Proprietas
- $12,500.00 Law Offices of Patrick Sutton. Complaint has been filed with Minnesota Bar.

Total **$33,750.00** LEGAL FEES *RELATED* TO WFHM

*Above total does not include filing fees, bankruptcy counseling fees or postage / service.

**Debtor acknowledges following previous bankruptcy filings:**

1. Chapter 7 Bankruptcy filed January 24, 2012 in Eastern District Court of Virginia.

    Dismissed due to WFHM's agreement to loan modification outside of bankruptcy.
2. Chapter 13 Bankruptcy filed October 15, 2013 in Eastern District Court of Virginia. After completing trial period with WFHM and making 3 payments of $6362.00 / $19,086.00 WFHM immediately placed loan in foreclosure without reason. After bankruptcy filed, WFHM agreed to new trial loan modification.
3. Chapter 7 filed September 19, 2014 in Eastern District Court
Standard discharge January 2018.
4. Chapter 13 filed June 16, 2016 in Eastern District Court. On the direction of Attorney Patrick Sutton of Minnesota, bankruptcy was filed to include an adversarial proceeding against WFHM for bad faith. Debtor was attending to mother's funeral in Florida when dismissed.
5. Chapter 13 filed August 25, 2016 in Eastern District Court due to dismissed bankruptcy of June 2016 while Debtor was attending funeral.
6. Chapter 12 filed November 21, 2016.